IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02319-WDM-BNB

FRANCISCO J. REYES,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE, COLORADO, et al,

      Defendants.

---

## ARAPAHOE DEFENDANTS' MOTION AND BRIEF FOR SUMMARY JUDGMENT

---

Defendants, the Board of County Commissioners of the County of Arapahoe (hereinafter the "BOCC"), Arapahoe County Sheriff's Office ("ACSO") and Diane Shouse, in her official and individual capacities, (hereinafter "Arapahoe Defendants"), submit this Motion and Brief for Summary Judgment pursuant to Fed.R.Civ.P. 56 and Fed.R.Civ.P. 56.1.

## I.    INTRODUCTION

This case arises out of the arrest of Plaintiff Francisco J. Reyes by Colorado State Patrol on a warrant issued out of Sedgwick County, Kansas. Plaintiff was brought to the Arapahoe County Detention Facility ("ACDF") by the Colorado State Patrol on November 18, 2005. Plaintiff failed to protest his arrest to any ACSO deputy, and he failed to tell the Arapahoe County Judge, the Public Defender or District Attorney at his November 22, 2005, advisement hearing that he was not the person identified in the arrest warrant. However, Plaintiff now brings Fourth and Fourteenth Amendment claims under §1983 against: unidentified employees of the Sheriff, John Doe and James Roe, in their individual capacities; Diane Shouse, a civilian clerk who is employed in the Arapahoe County Sheriff Fugitive/Warrants Section, in her individual

capacity; the Arapahoe County Board of County Commissioners, in its official capacity; and the Arapahoe County Sheriff, Grayson Robinson, in his official capacity.

Arapahoe Defendants are entitled to summary judgment on all of Plaintiff's claims for several reasons. First, the undisputed facts fail to demonstrate *any* constitutional violation of the Fourth or Fourteenth Amendment by *any* individual or policy maker. Second, the only individual defendant identified is a civilian warrants clerk, Diane Shouse, but she lacks personal participation as required under 42 U.S.C. §1983 because she *never* worked in the booking department for the ACSO, *never* met or had any contact with Plaintiff and also has absolute and/or qualified immunity.[1] Third, the claims against the BOCC should be dismissed because it is an improper party.  Finally, Plaintiff has failed to identify any BOCC or Sheriff policy or custom that was the moving force behind any constitutional violation.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of this motion only, Arapahoe Defendants set forth the following facts:

**PLAINTIFF'S ARREST BY COLORADO STATE TROOPER**

1.   On Friday, November 18, 2005, Phillip Gallegos, a Colorado State Trooper, stopped Plaintiff Francisco J. Reyes for speeding through a construction zone in Arapahoe County.  **Ex. A-1**, Deposition excerpts of Phillip Gallegos, pp 6:16-8:1; **Ex. A-2**, Deposition excerpts of Plaintiff Reyes, pp. 73:2-15; 74:11-25; 203:6-204:8.

2.    After he was stopped for speeding, Plaintiff Reyes provided Gallegos a Kansas Identification Card and identified himself as "Francisco J. Reyes."  **Ex. A-1**, pp. 7:20-8:8; 15:25-16:5; **Ex. A-2,** pp. 74:16-75:8; 204:9-14.

---

[1] Counsel does not represent the unidentified "John Doe" and "James Roe" defendants, but states that Plaintiff did not name any defendants within the applicable statute of limitations and John Doe and James Roe are entitled to the defense of qualified immunity.

3.   The Kansas Identification Card, No. K00951769, identified Plaintiff as "Francisco J. Reyes," with a date of birth October 10, 1972.  **Ex. A-1,** pp. 14:16-15:10 & **Att. 1 to Ex. A-1**, Affidavit of Phillip Gallegos, ¶ 5.

4.   While Plaintiff Reyes was stopped on the side of the road, Gallegos contacted the Colorado State Patrol Dispatch Center via radio to check for outstanding warrants on a "Francisco J. Reyes," DOB October 10, 1972 and Kansas ID Card No. K00951769.   **Ex. A-1**, pp.  8: 9-14; and **Att 1. to Ex. A-1**, ¶6.

5.   Gallegos was informed by dispatch that there was an outstanding warrant on the charge of rape from Wichita (Sedgwick County) Kansas for the arrest of a "Francisco J. Reyes" with the exact same Kansas Identification Card No. K00951769 as Plaintiff Reyes and Plaintiff Reyes's October 10, 1972 birth date matched one of the several birth dates used by the wanted subject. **Ex. A-1,** pp. 8:9-18; 15:6-24; 16:6-23 & **Att. 1, to Ex. A-1** ¶7.

6. Gallegos also checked and found that Plaintiff Reyes had a scar on his right arm, which matched one of the identifying descriptors of the wanted subject, Francisco J. Reyes. **Ex. A-1,** pp. 11:4-13; **Ex. A-2**, pp. 209:13-24.

7. Gallegos arrested Plaintiff Reyes based on the outstanding warrant from Sedgwick County, Kansas and transported Plaintiff to the ACDF. **Ex. A-1**, pp. 10:2-10:9; 12:8-17; 13:9-12 & **Att 1 to Ex. A-1,** ¶8.

### BOOKING OF PLAINTIFF REYES

8.   At no time during the booking process at ACDF did Plaintiff inform the booking deputies that the warrant out of Kansas was *not* him.  **Ex. A-3,** Declaration of Dep. Nesvold ¶15; **Ex. A-4**, Declaration of Dep. Green ¶10.

9.   Plaintiff has claimed that when he was booked into the ACDF: 1) he provided his name of "Francisco Reyes" to a booking deputy; and 2) prior to being admitted into the prison population,

he requested that an unidentified deputy check his paperwork and stated, "I will be leaving pretty soon." **Ex. A-2**, pp. 128:21-129:17; 143:12-23 & **Att. 1 to Ex. A-2,** Plaintiff's Response to Interrogatory No. 5 of Defendants' Discovery Requests signed by Reyes on August 14, 2007; **Ex. A-2**, pp. 171:1-14. [2]

10.  Prior to or simultaneously with Plaintiff Reyes's arrival at the ACDF, Colorado State Patrol forwarded a teletype of the Kansas felony warrant of the wanted subject, Francisco J. Reyes, to the ACDF. **Ex. A-1**, pp. 19:3-11; **Ex. A-3, ¶ 9 & *Att. 3 to Ex. A-3,** NCIC Warrant Teletype, dated 11/18/05 at 18:50:53 hours. [3]

11.  The Receiving Deputy at the ACDF compared the identifying information provided by Plaintiff Reyes and/or contained in Plaintiff Reyes's Kansas Identification Card to the teletype reference of the Kansas felony warrant of Francisco J. Reyes dated November 18, 2005. **Ex. A-3, ¶¶7-10, & *Att 1 to Ex. A-3,** Kansas Identification Card of Plaintiff, ***Att 2 of Ex. A-3,** Booking Report of Plaintiff; & ***Att 3 to Ex. A-3,** NCIC Warrant Teletype dated November 18, 2005.

12.  The Receiving Deputy confirmed that the wanted subject in the Kansas warrant had the same forename, middle initial, and surname as Plaintiff Reyes.  **Ex. A-3 ¶ 11.**

13.  The Receiving Deputy also confirmed that the Kansas Identification Number of Plaintiff Reyes, K00951769, also was an exact match of the Kansas Identification Number of the wanted subject listed in the warrant teletype, Francisco J. Reyes.  **Ex. A-3 ¶¶7, 14.**

---

[2] At one point during his deposition, Plaintiff testified that he did not want to "get in the jumper because I was going to leave pretty soon because they had the wrong guy." **Ex. A-2,** pp. 94:4-18.  It is unclear from that testimony as to whether Plaintiff actually stated to the unidentified officer that he was the wrong guy or whether Plaintiff was thinking to himself that he was the wrong guy.  Plaintiff's later testimony and Plaintiff's written discovery responses, however, demonstrate that he simply told this unidentified officer to check his paperwork.  **Ex. A-2,** pp. 113:6-24; 171:1-14 and 128:21-129:17; 143:12-23 & **Att. 1** to **Ex. A-2,** Plaintiff's Response to Interrogatory No. 5 of Defendants' Discovery Requests signed by Reyes on August 14, 2007.

[3] All exhibits marked with an asterisk have been filed under seal.  Defendants are filing a Motion to Seal contemporaneously with this Brief.

14.   The Receiving Deputy confirmed that the date of birth of October 10, 1972 and social security number of \*\*\*-\*\*-3998[4] provided by Plaintiff Reyes were exact matches to alias birth dates and social security numbers used by the wanted subject, Francisco J. Reyes.   **Ex. A-3** ¶¶11-13.

15.   The Processing Deputy at the ACDF fingerprinted Plaintiff Reyes and observed him sign his named on the fingerprint card as "Francisco J. Reyes." **Ex. A-4** ¶¶7-9 **& \*Att. 1 to Ex. A-4,** Fingerprint Card of Plaintiff.

**SHOUSE'S COMPLETION OF PAPERWORK AND EXTRADITION HEARING**

16.   On November 18, 2005, the ACDF faxed Diane Shouse, a Senior Clerk who works at the ACSO Fugitive Transport Section, a copy of Plaintiff Reyes's Booking Report. **Ex. A-5,** Declaration of Shouse ¶ **6**; and **\*Att. 1 to Ex. A-5,** ACSO Booking Report for Francisco Jose Reyes.

17.   As part of her duties, Shouse is responsible for processing the paperwork of new persons who are detained at the ACDF on out-of-state Fugitive from Justice Warrants.  **Ex. A-5,** ¶ **4.**

18.   On Monday, November 21, 2005, Shouse printed the list of Fugitive from Justice warrants and found that Plaintiff was booked in as a fugitive from the State of Kansas. **Ex. A-5,** ¶ **7;** and **\*Att. 2 to Ex. A-5,** excerpts of ACSO Warrants F.O.J. Receiving Report, dated November 18, 2005 through November 21, 2005.

19.   Shouse then contacted the Sedgwick County Sheriff's Office in Wichita, Kansas and ordered a copy of the warrant. Sedgwick County Sheriff Deputy Westbrook faxed her a copy of

---

[4] Arapahoe Defendants are redacting Plaintiff's social security number in this motion and supporting attached declarations pursuant to Fed.R.Civ.P. 5.2(a).  However, as demonstrated by supporting exhibits filed under seal, it is undisputed that the social security number of Plaintiff and one of the social security numbers used by the wanted subject are identical.  Plaintiff's date of birth has not been redacted because he has waived protection from this identifying pursuant to Fed.R.Civ.P. 5.2(h).

the warrant on November 21, 2005.  *See* **Ex. A-5, ¶ 8;** and **Att. 3 to Ex. A-5,** Fax from Sedgwick County Sheriff's Department to Diane Shouse, with attached warrant.

20.  Shouse compared the information of the wanted subject identified in the Kansas warrant with the information of Plaintiff Reyes set forth in the ACSO Booking Report.  **Ex. A-5, ¶ 9.**

21.  Shouse confirmed that the wanted subject in the Kansas warrant had the same forename, middle initial, and surname as the person in the custody of the ACSO.  **Ex. A-5, ¶ 10.**

22.   Shouse also noticed that the wanted subject used, as aliases, the same forename, surname name, date of birth, and social security number as Plaintiff Reyes.  *See* **Ex. A-5, ¶ 12;** and *****Att. 4 to Ex. A-5,** NCIC message dated November 18, 2005.

23.  Shouse was satisfied that the person in the custody of the ACSO was the same person identified in the Kansas warrant.  **Ex. A-5, ¶ 13.**

24.  Shouse completed the fugitive case and sent it to the DA's Office for the advisement of the Defendant (Plaintiff Reyes here) on the charge of Fugitive from Justice pursuant to C.R.S. §§ 16-19-103 and 16-19-114. **Ex. A-5, ¶ 14.**

25.  Deputy DA Fauver received the fugitive case filing from Shouse of the ACSO on or about November 21, 2005.  *See* **Ex. A-6,** Declaration of Stephen Fauver, ¶4.

26.  Deputy DA Fauver appeared on the record on November 22, 2005 for the advisement of Plaintiff Reyes on the charge of Fugitive from Justice, pursuant to C.R.S. §§ 16-19-103 and 16-19-114. **Ex. A-6, ¶ 5**.

27.  Deputy DA Fauver tendered a copy of the following documents to Public Defender ("PD") Baumann: Affidavit and Complaint with supporting documents; Stipulation for Digital Recording; Advisement of Rights; and, Waiver of Extradition.  **Ex. A-6, ¶ 6**; and *****Att. 1 to Ex. A-6,** Affidavit and Complaint with supporting documents; **Att. 2 to Ex. A-6,** Stipulation for

Digital Recording; **Att. 3 to Ex. A-6,** Advisement of Rights; and **Att. 4 to Ex. A-6,** Waiver of Extradition.

28. Deputy DA Fauver was provided and reviewed a copy of the Pretrial Release Report dated November 22, 2005, that reflected that Plaintiff Reyes would like to waive extradition to the State of Kansas. **Ex. A-6, ¶ 7**.

29. PD Baumann tendered a written Stipulation for Digital Recording of the hearing to the court, signed by Plaintiff Reyes, and thereby waived the use of a court stenographer. **Ex. A-6, ¶ 8**; and **Att. 2 to Ex. A-6**.

30. PD Baumann tendered a copy of the written Advisement of Rights to the Court, purportedly signed by Plaintiff Reyes, wherein Plaintiff acknowledged he read and understood the charges and his rights in this matter. Baumann waived further reading and advisement on behalf of his client. **Ex. A-6, ¶ 9**; and **Att. 3 to Ex. A-6**

31. PD Baumann advised the Court that his client was voluntarily waiving extradition to the requesting state and tendered the written Waiver of Extradition, signed by Plaintiff Reyes, to the Court. **Ex. A-6 ¶ 10**; and **Att. 4 to Ex. A-6**

32. At no time did Plaintiff Reyes or his attorney make any representations on the record before Arapahoe County Court Judge Chauche, or off the record to Deputy DA Fauver, that the person appearing in custody was not the person identified in the warrant issued by Sedgwick County, Kansas, District Court. **Ex. A-6 ¶ 11; Att. 1 to Ex. A-2,** Plaintiff's Response to Request for Admission No. 4 of Defendants' Discovery Requests signed by Reyes on August 14, 2007; **Ex. A-7,** Transcript of Electronically Recorded Proceedings on November 22, 2005 & **Ex. A-2,** pp. 118:6-119:17.

33.   Plaintiff Reyes also failed to inform his attorney, PD Bauman, that he was not the person named in the warrant but simply stated that he wanted to waive extradition to Kansas. **Ex. A-2,** pp. 113:25-117:11; 182:6-183:5.

34.   Later that day on November 22, 2005, the Arapahoe County Court sent Shouse a copy of the signed Waiver of Extradition for Plaintiff.   **Att. 5 to Ex. A-5** Certified copy of the Waiver of Extradition for Francisco Reyes.

35.   Shouse then notified Deputy Westbrook of the Sedgwick County Sheriff's Office in Wichita Kansas, that Plaintiff had signed a Voluntary Waiver of Extradition and was ready for transport.   **Ex. A-5 ¶ 16**; and *\**Att. 6 to Ex. A-5** Fax Cover Sheet from ACSO to Sedgwick County with attached waiver.

36.   Plaintiff never had any personal contact or direct communications with Shouse while he was at the ACSO Detention Facility.   **Ex. A-2,** pp. 107:4-11; **A-5, ¶19.**

37.   Shouse never received any information that Plaintiff Reyes was not the same person as the person identified in the Kansas warrant.   **Ex. A-5 ¶ 20.**

**INMATE REQUEST FORMS & EXTRADITION**

38.   On November 20, 2005, while at the ACDF, Plaintiff Reyes wrote an Inmate Request Form requesting a phone call to his family in Kansas City, Kansas.   **Ex. A-2***, pp. 110:16-111:6; *****Att. 2** to **Ex. A-2**, Inmate Request Form dated 11/20/05**.**

39.   On November 24, 2005, while at the ACDF, Plaintiff Reyes wrote an Inmate Medical Request Form complaining about heartburn and requesting shoes.   **Ex. A-2**, pp. 119:18-120:9 & *****Att. 3** to **Ex. A-2**, Inmate Medical Request Form dated 11/24/05.

40.   On November 28, 2005, while at the ACDF, Plaintiff Reyes wrote an Inmate Medical Request Form requesting to see a dentist.   **Ex. A-2**, pp. 122:19-123:13 & *****Att.4** to **Ex. A-2**, Inmate Medical Request Form dated 11/28/05.

8

41.  During his incarceration at the ACDF, Plaintiff Reyes did not complete any Inmate Request Form or any other writing where he claimed he was mistakenly identified as the wanted subject from Kansas.  **Ex. A-8**, Declaration of Dep. Winslow ¶4.

42.  At no time during his detention at the ACDF, did Plaintiff Reyes tell any ACSO officer that he was not the person named in the warrant.  **Ex. A-2,** pp. 112:13-18.

43.  On or about December 1, 2005, Plaintiff Reyes was extradited to Sedgwick County, Kansas.  **Ex. A-2,** pp. 124:6-15.

### III.   STANDARD OF REVIEW

Under 56(c), the court shall enter summary judgment if there is no genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).   Summary judgment motions raising immunity are reviewed "differently." *Ward v. Anderson*, 494 F.3d 929, 933 (10th Cir. 2007). On qualified immunity, plaintiffs have a "heavy two-part burden" and must show: (1) defendant violated a constitutional or statutory right; and (2) the right was clearly established at the time of the defendant's conduct. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) Qualified immunity is a question of law. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

### IV. ARGUMENT

#### A.  NO CONSTITUTIONAL VIOLATION

Plaintiff alleges Fourth and Fourteenth Amendment violations under 42 U.S.C. §1983. The undisputed facts fail to show *any* constitutional violation. Therefore, Plaintiff's entire complaint must be dismissed.

1.  **No Fourth Amendment Violation**. The Fourth Amendment generally governs *initial seizures. Anderson v. Maddocks*, 2007 WL 915422, *7 (D. Colo. 2007) (slip copy) (*citing Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004)).   Here, Gallegos, a Colorado State Trooper, was responsible for Plaintiff's arrest. Facts 1, 7. Since Gallegos is not an employee of

ACSO and is not a party, the Fourth Amendment claim must be dismissed against the Arapahoe Defendants.

Plaintiff's Fourth Amendment claim also fails because a mistaken arrest and detention *based on a facially valid warrant* does not violate the Fourth Amendment. *Brady v. Dill,* 187 F.3d 104, 110 (1st Cir. 1999) (*citing Baker v. McCollan*, 443 U.S. 137 (1979)). *See also, Echols v. Unified Government of Wyandotte County*, 399 F.Supp.2d 1201, 1208-09 (D. Kan. 2005) (relying on *Brady v. Dill* and other cases and finding no Fourth Amendment violation based upon a mistaken arrest on a facially valid warrant); *Hill v. Scott*, 349 F.3d. 1068, 1073-74 (8th Cir. 2003) (a mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant). Here, there is no dispute that Plaintiff was arrested pursuant to a facially valid warrant. Therefore, the Fourth Amendment claims against the Arapahoe Defendants must be dismissed.

**2. No Fourteenth Amendment Violation**.   The Fourteenth Amendment prohibits governmental action that deprives "any person of life, liberty or property, without due process of law..." U.S. Const. Amend. XIV, §1.   It is well-settled that there is no "constitutional right to be free from injury whenever the state may be characterized as a tortfeasor…" *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir. 1977).  *See also, Romero v. Fay*, 45 F.3d 1472 1480 (10th Cir. 1995) (*quoting Baker*, 443 U.S. at 146) (false imprisonment is not a 14th Amendment violation "merely because the Defendant is a state official").

Courts have not found Fourteenth Amendment (or any constitutional) violations in mistaken identity/false imprisonment cases with facts similar to those alleged by Plaintiff Reyes.

a. <u>*Baker v. McCollan*</u>.  In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court did not find a Fourteenth Amendment violation for a mistaken arrest and detention based on a facially valid warrant.  In *Baker*, Linnie McCollan was stopped for running a red light and law

enforcement authorities did a warrant check which revealed an outstanding warrant for narcotics possession under his name. *Id*. at 140-41. Despite his repeated protests, Linnie was detained for several days and released after his features were compared to a photograph of the wanted man, which was Linnie's brother. *Id*.

Linnie then brought a lawsuit under §1983 alleging that despite his protests of mistaken identity, he was detained in jail in violation of his constitutional rights. *Id*. at 141-42. The Court disagreed, stating that "Respondent's innocence...is largely irrelevant to his claim of deprivation of liberty without due process of law.  The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." *Id.* at 145.  The Court further stated:

> [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury. *Id*. at 145-46.

b. *Brady v. Dill*.  Courts in this Circuit have relied upon *Brady v. Dill*, 187 F.3d 104 (1st Cir. 1999) in wrongful arrest cases. *See, e.g., Echols, supra* and *Archuleta v. Wagner*, 2007 WL 646317, *6 (D. Colo. 2007) (unpublished opinion); *Rudkin v. Sedgwick County, Kansas*, 469, F.Supp.2d 953, 958 (D. Kan. 2007). In *Brady,* a plaintiff brought a §1983 claim against the police officers who detained him after he was arrested on a facially valid warrant containing his name. *Id.* at 106-07. The plaintiff repeatedly made pleas of innocence based on mistaken identity, and as a result, the police officers conducted a further investigation.  Despite their doubts that they may have the wrong person in custody, the plaintiff was not released until after he was taken to court and arraigned. *Id*.

The 1st Circuit held that the defendants were entitled to summary judgment. *Id*. at 115. In doing so, it held that the plaintiff had not asserted a due process right because a person arrested pursuant to a facially valid warrant who claims he is a victim of mistaken identify, "in effect is pressing a claim of innocence in fact-a claim not analytically distinct from any other factual defense," and "our legal system simply does not rely on police officers to determine its bona fides, even though they may have information bearing on that ultimate question." *Id* at 111-12. The Court held that it is the responsibility of the judicial branch to make "the final ascertainment of guilt or innocence-not for the police to take the matters into their own hands." *Id.* at 112.

c. *Echols v. Unified Government of Wyandotte County, Kansas City, Kansas*. *Echols*, 399 F.Supp.2d at 1206, relying upon *Baker, Brady,* and 10th Circuit precedent, also found no constitutional violation with respect to a 25-day detention of an arrestee who claimed he was not the person named in a facially valid arrest warrant. *Id.* at 1206-09. Echols, the plaintiff was arrested on a warrant issued for someone named Eacholes. *Id*. at 1202. Other than their names, neither Echols nor Eacholes shared any other similar characteristics. *Id*.

Echols claimed that he told the booking officer that the warrants wrongly listed his name and requested that his fingerprints be checked, but the booking officer told Echols to speak to the judge. *Id*. at 1203. When Echols appeared before the judge, he stated that he was not the person wanted in the warrant, but the judge was not persuaded and scheduled trial. *Id.* at 1204. Echols claimed that he told 7 or 8 other deputies at the jail that he was not the person in the warrant, but he did not know the names of any of these people and could not describe them. *Id*. Echols also did not ask to talk with a supervisor or file any written grievance using an Inmate Communication Form. *Id.* Eventually, Echols was released the second time he appeared before the judge for trial. *Id*.

On Echols' §1983 claims, the court granted summary judgment for the defendants stating, "Under the law of the Tenth Circuit, there is no constitutional violation in this case because a police officer has no duty to investigate a detained prisoner's claim of innocence if the prison was arrested on a facially valid warrant." *Id*. at. 1206.

     d.  <u>Application of Law</u>. If there was no constitutional violation in *Baker, Brady* and *Echols*, there certainly is no violation here. Although Plaintiff Reyes's height and weight were different from the height and weight of the wanted subject, Plaintiff's Reyes's name, Kansas Identification Card, social security number, date of birth, and scars on his right arm were an ***exact match*** of identifying information used by the wanted subject. Facts 2-6, 11-14, 20-23. In addition, Plaintiff's sex and eye color matched that of the wanted subject, his hair color was similar to the description of the wanted subject (brown hair versus black hair), and both he and the wanted subject were from Kansas. *See* \***Atts. 1, 2 & 3** of **Ex. A-3**. Such matches are considerably more than the matches in *Echols* where the wanted subject and the person actually arrested had "no similar characteristics beyond their names." 399 F.Supp.2d at 1201. *See also*, *Johnson v. Miller*, 680 F.2d 39, 42 (7th Cir. 1982) (concluding that the mistaken arrest of a white woman pursuant to an arrest warrant for a black woman did not violate the Constitution).

     Further, unlike the plaintiffs in *Baker, Brady* and *Echols*, Reyes ***did not protest his arrest to ACSO deputies when he was booked into ACDF.*** Fact 8. Plaintiff Reyes simply told the receiving deputy at ACSO that his name was "Francisco Reyes," and then later told an unidentified ACSO deputy to check his paperwork, because he would be "leaving soon. " Fact 9. Such innocuous statements are insufficient to put anyone on notice that Reyes was the wrong person.

     At no time during his detention at ACDF, did Plaintiff inform any guard or other employee that he was not the person named in the warrant. Fact 42. Plaintiff, however, did

submit three Inmate Request Forms where he requested: 1) to call his family; 2) different shoes; 3) heartburn medication; and 4) to see a dentist.  Facts 38-40.   He never stated in any Inmate Request Form that he was the wrong person named in the warrant.  Fact 41.   Therefore, no one at ACSO had any knowledge that Plaintiff may not be the wanted subject.

Even if Plaintiff had protested his detention, his Fourteenth Amendment claim still fails because "an official charged with maintaining custody of an accused named in a facially valid warrant has no independent duty to investigate a detainee's claims of innocence" or "perform an error-free investigation of such a claim." *Baker,* 187 F.3d at 119.  *See also*, *Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000) (jailers had no independent duty to investigate defendants' claims of innocence) (*citing Baker*); *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984) (unless a warrant is facially invalid, an officer has no constitutional duty to independently determine its validity) (*citing Baker*); *Echols,* 399 F. Supp.2d at 1206-07 (officer has no duty to investigate a detained prisoner's claim of innocence if arrested on a facially valid warrant).  It has even been held that continuing to detain an arrestee after discovering he was the wrong person did not violate the Fourteenth Amendment. *See, e.g., Rudkin v. Sedgwick County, Kansas*, 469 F.Supp. 2d 953 (D. Kan. 2007).

Plaintiff has argued that the amount of time he was detained at the ACDF-15 days-violated his constitutional rights.  *See* Plaintiff Reyes's Motion to Dismiss or Stay Summary Judgment Motion of Arapahoe Defendants, dated May 1, 2007,  (Doc. No. 57).  This theory is not supported by courts in this circuit. *Echols*, for example, involved a 25-day detention and the court found no constitutional violation. 399 F.Supp.2d at 1209 (*relying on Scull v. New Mexico* 236 F.3d 588, 598 (10th Cir. 2000), where the §1983 plaintiff was detained for 30 days yet the Tenth Circuit found no constitutional violation). *See also, Atkins*, 556 F.2d at 487-89 (no

constitutional violation after Atkins was held for 33 days before it was determined he was mistakenly arrested).

Further, the judicial system presents the proper forum in which to determine the innocence of an arrestee. *Romero*, 45 F.3d at 1480-81. Plaintiff Reyes appeared before a judge for his advisement hearing *two business days* (four calendar days) after his arrest (he was arrested on Friday, Nov. 18, 2005 and appeared before the Judge on Tuesday, Nov. 22, 2005). Facts 1, 26-33. Neither Plaintiff nor the PD notified the Court or the DA that Plaintiff was misidentified or wrongfully detained. In fact, Plaintiff testified that he did not even tell the PD this, but instead, told the PD that he wanted to waive extradition and return to Kansas. Fact 33. After that hearing, Plaintiff Reyes was returned to the ACDF and extradited to Kansas on December 1, 2005. Facts 34-35, 39-43. Since Plaintiff still failed to tell anyone at his November 22, 2005, hearing that he was the wrong person named in the warrant, the Court, the PD, the DA and no one from ACSO had any reason to believe otherwise.

Since there is no constitutional violation, Defendants are entitled to summary judgment on all claims.

### B. CLAIMS AGAINST SHOUSE MUST BE DISMISSED

The only individual Plaintiff Reyes has identified by name in this lawsuit is Diane Shouse,[5] a civilian clerk responsible for preparing court documents for the DA on Fugitive of Justice warrants. Fact 17. As discussed below, summary judgment should be entered for Shouse

---

[5] "John Doe" and "James Roe," are entitled to a statute of limitations defense because Plaintiff never substituted these names with named Defendants within the applicable two-year statue of limitation period. *Moore v. Doe*, 13 F.3d 406, *2 (10th Cir. 1993) (unpublished) (citation omitted) (When an action is brought against unknown and unidentified defendants, the statute of limitations continues to run until a named defendant is substituted); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (the statute of limitations for claims brought under 42 U.S.C. §1983 is two years). In any event, such defendants would also be entitled to qualified immunity as there is no constitutional violation, clearly established or otherwise.

because; 1) there is insufficient personal participation; and 2) she is immune from suit by absolute or qualified immunity.

**1. Insufficient Personal Participation**. Liability under §1983 requires "direct personal responsibility for the claimed deprivation of a constitutional right..." *Clayton v. Ward*, 232 Fed. Appx. 827, *2 (10th Cir. 2007) (unpublished) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) and citing other cases). A defendant's personal involvement in a constitutional violation may be established via allegations of personal direction, actual knowledge or direct discrimination. *Evancho v. Fisher*, 423 F.3d 347, 353 (3rd Cir. 2005).

Here, Shouse never met or spoke to Plaintiff Reyes. Fact 36. Shouse was not involved in the arrest of Plaintiff Reyes and never worked in the ACDF. **Ex. A-5**, ¶¶2, 19. Shouse was responsible for processing paperwork of new individuals detained at ACDF on Fugitive of Justice warrants. **Ex. A-5**, ¶¶4-5. Shouse reviewed information on Plaintiff Reyes sent to her by the ACDF, compared that information to the Kansas warrant of the wanted subject, and forwarded paperwork to the DA. **Ex. A-5**, ¶¶6-14. Shouse never personally observed Reyes and never had any opportunity to assess his physical description and never received any information that Plaintiff Reyes was not the person identified in the Kansas warrant. **Ex. A-5**, ¶¶19-20. Therefore, summary judgment should be entered for Shouse for lack of personal participation.

**2. Shouse Has Absolute Immunity.** The Supreme Court has recognized absolute civil immunity for the "quasi-judicial" civil immunity of prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 430-31 (1976), grand jurors, *Id.* at 423 n. 20, and agency officials, *Butz v. Economy*, 438 U.S. 478, 512-15 (1978), and for acts intertwined with the judicial process. *Valdez v. City and County of Denver*, 878 F.2d 1285, 1288-90 (10th Cir. 1989).

The 10th Circuit has recognized absolute immunity for court clerks when they perform judicial actions. *Lundahl v. Zimmer,* 296 F.3d 936, 939 (10th Cir. 2002). For example, in a recent

unpublished decision, *Wymore v. Green*, 2007 WL 2340795 (10th Cir. 2007), the 10th Circuit held that even if a state court clerk violated a prisoner's constitutional rights by refusing to accept his court documents, she was entitled to absolute immunity. *Id.* at *3. "To hold otherwise would have a chilling effect on the judicial duties and actions of the clerk…" *Id.* (citing *Lundahl* and other 10th Circuit cases).

The 10th Circuit has also found that *law enforcement officers* who are accused of arresting the wrong person are entitled to the defense of absolute immunity. "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983 … officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Turney v. O'Toole*, 898 F.2d 1470, 1472  (10th Cir. 1990). *See also Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984).

If arresting officers and court clerks are entitled to absolute immunity, Shouse should be as well. Shouse, as part of her routine duties, reviewed the information sent to her by the ACSO Deputies with the information contained in the Kansas warrant, concluded Plaintiff Reyes was the person named in the warrant, and sent the information to the DA. **Ex. A-5**, ¶¶4-14.  Shouse's duties in preparing the paperwork for Plaintiff's Reyes cases are intimately associated with the judicial process. Neither Colorado State Patrol, Plaintiff's attorney of record, nor the Arapahoe County Court can be held liable for the acts complained of in this case and each is entitled to the defense of absolute immunity.  Therefore, it would make little sense to immunize those directly involved in the judicial and prosecutorial process but not immunize Shouse.  Failing to immunize Shouse would make her a "lightning rod for harassing litigation." *Valdez*, 878 F.2d at 1289. Thus, Shouse is entitled to absolute immunity.

**3.   Shouse Has Qualified Immunity.** Even if Shouse is not entitled to absolute immunity, she is certainly entitled to qualified immunity. Qualified immunity is available to any local officer not covered by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). Where "officers of reasonable competence could disagree" regarding the lawfulness of specific conduct, qualified immunity is warranted. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) (citations omitted). "[O]fficials will not be liable for mere mistakes of judgment, whether the mistake is one of fact or one of law." *Butz*, 438 U.S. at 507.

Plaintiff Reyes has failed to meet his "heavy two-part burden" for qualified immunity. *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).   First, for the reasons discussed in Section A and B(1) above, Shouse did not commit any constitutional violation.

 Second, the undisputed facts fail to show that Shouse's actions of processing the FOJ warrant and putting together a case file for the DA to review prior to Plaintiff Reyes's advisement hearing violated any clearly established law. Ordinarily, for the law to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Robertson v. Las Animas County Sheriff's Dept*, 500 F.3d 1185, 1191 (10th Cir. 2007) (citation omitted). "While the facts of the cases compared need not be identical … they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Mecham*, *supra*, 500 F.3d at 1206 (citation omitted).

Here, there is no Supreme Court, Tenth Circuit or other on point authority indicating that Shouse's administrative actions in this case violated any law whatsoever.  In fact, the relevant case law such as *Baker, Brady* and *Echols,* demonstrates that all Arapahoe Defendants acted

appropriately. Therefore Shouse, a civilian clerk who never met Plaintiff is entitled to qualified immunity.

### C.      THE BOCC IS NOT A PROPER PARTY

The BOCC and Sheriff are separately elected officials. C.R.S. § 30-10-301, *et seq*., and § 30-10-501, *et seq*. (2006), and COLO. CONST. art. XIV, § 6 and § 8. By statute, the Sheriff is the employer and hires his deputies. C.R.S. § 30-10-506 (2006). Further, by statute, the Sheriff, not the BOCC, is in charge of the jail. C.R.S. § 30-10-511 (2006). The BOCC can only take actions pursuant to specifically enumerated powers, and operation of the jail is not one of the specific statutory powers given to the BOCC. *People ex rel. Jones v. Carver,* 38 P. 332, 334 (Colo. App. 1894); and C.R.S. § 30-11-107 (2006); *Tunget v. BOCC of Delta County,* 992 P.2d 650, 651-652 (Colo. App. 1999). *See also* **Ex. A-9**, Declaration of Sheriff, ¶¶11-12. Based on the foregoing, any official capacity claim against the BOCC must be rejected because it is an improper party and could not have caused a constitutional violation.

### D.  NO POLICY OR CUSTOM CAUSED A CONSTITUTIONAL VIOLATION

The BOCC and the Sheriff are *not* liable under §1983 for the tortious acts of its employees. *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). If there is no constitutional violation, there can be no municipal liability under §1983. *See, e.g, Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001). As discussed above, there is no constitutional violation here, and on that basis alone, all claims against the BOCC and the Sheriff must be dismissed.

Even if there is a constitutional violation, the BOCC and the Sheriff are only liable for action taken pursuant to an "official municipal policy." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997). To support municipal liability a plaintiff must show: (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the

violation alleged.'" *Id*.   A municipality is liable only when the official policy is the "moving force" behind the injury alleged.  *See Barney*, 143 F.3d at 1307.  A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights." *Id.* (citation omitted). "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees."  *Id*.

Here, there is no evidence that the Sheriff had any unconstitutional custom or policy, or that any such policy *affirmatively* caused Plaintiff to be detained at the ACDF.  *See* **Ex. A-9**, ¶¶7-8. This is especially true given the fact that Plaintiff Reyes failed to tell the booking deputies that he was not the person named in the arrest warrant. Had he done so, the ASCO would have been able to further investigate his claims by comparing his fingerprints with the wanted subject, comparing photographs or taking other actions. *See* **Ex. A-10**, Deposition excerpts of Sheriff Robinson, pp. 23:14-27:20.

To the extent Plaintiff is claiming a custom or policy relating to inadequate training, this claim also fails.  To prevail on such a claim, Plaintiff must prove, "the need of more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers… can reasonably be said to have been deliberately indifferent to the need" for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted).   Under this standard, there is no evidence supporting any failure to train claim.

Based on the foregoing, Plaintiff's claims against the BOCC and the Sheriff must be dismissed.

WHEREFORE, Plaintiff's lawsuit must be dismissed with prejudice and the Arapahoe Defendants should be awarded costs, attorney fees and other appropriate relief.

DATED this 14th day of December 2007.

KATHRYN L. SCHROEDER
ARAPAHOE COUNTY ATTORNEY

*s/ Lana L. Rupprecht*
Lana L. Rupprecht
Assistant County Attorney
5334 S. Prince Street
Littleton, Colorado 80166-0001
Telephone: 303-795-4639
FAX:  303-738-7836
Email: LRupprecht@co.arapahoe.co.us

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007, I electronically filed the foregoing **ARAPAHOE DEFENDANTS' MOTION AND BRIEF FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

gga@atchesonlaw.com

kurtpkerns@aol.com

cpilate@morganpilate.com

pwhite@warriorlawyers.com

blumenthal.law@gmail.com

*s/ Lana L.Rupprecht*
Lana L. Rupprecht
Assistant County Attorney
5334 S. Prince Street
Littleton, Colorado 80166-0001
Telephone:  (303) 795-4639
FAX:  (303) 738-7836
E-mail: Lrupprecht@co.arapahoe.co.us