IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-02319-WDM-BNB

FRANCISCO J. REYES,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE, et al.,

    Defendants.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Miller, J.

    This matter is before me on the Motion for Summary Judgment (doc no 107) filed by the Board of County Commissioners of the County of Arapahoe ("Board"), the Arapahoe County Sheriff Grayson Robinson, and Diane Shouse. Plaintiff opposes the motion. After a review of the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion will be granted.

## Background

    On or around November 18, 2005, Plaintiff was stopped by Phillip Gallegos, a Colorado State Trooper, for speeding though a construction zone.[1] Plaintiff provided a Kansas identification card that identified him as "Francisco J. Reyes" with a date of birth of October 10, 1972. Plaintiff's full name is Francisco Jose Reyes. Gallegos then

---

[1]There is apparently no dispute that Gallegos had probable cause or reasonable suspicion to make the initial traffic stop.

contacted the Colorado State Patrol Dispatch Center via radio and provided Plaintiff's name, birth date, and identification number to check for outstanding warrants. Gallegos was informed by the dispatcher that there was an outstanding warrant on the charge of rape from Wichita (Sedgwick County) Kansas for a Francisco J. Reyes with the same Kansas identification card number. The fugitive used a variety of names, including Francisco R. Carrillo, Poncho Reyes, Francisco Javier Reyes, Javier Reyes, Francisco Javier Miranda Reyes, and Javier Francisco Reyes Aguilar. In addition, Gallegos was informed that the wanted suspect used several birth dates, including October 10, 1972. Finally, Gallegos was told that the wanted suspect had a scar on his right arm. Gallegos examined Plaintiff's right arm and found a scar there. Gallegos then arrested Plaintiff based on the outstanding warrant and transported him to the Arapahoe County Detention Facility (the "ACDF").

Plaintiff expressed surprise to Gallegos over the rape allegations and told him that it must be a mistake. Plaintiff also may have told the booking deputy at ACDF that there had been a mistake and that he would be "leaving pretty soon." This was apparently the only time that Plaintiff attempted to inform anyone at ACDF that he was not the Francisco J. Reyes identified in the warrant.

The ACDF received a teletype reference to the Kansas felony warrant of the suspect, which the receiving deputy at the ACDF compared to Plaintiff's information, obtained from Plaintiff's identification card and from Plaintiff. The receiving deputy confirmed that the wanted Kansas subject had the same first name, family name, and middle initial as Plaintiff. In addition, the Kansas identification card number for the

wanted subject was the same as Plaintiff's. There were a variety of aliases, alias birth dates and social security numbers associated with the wanted subject, including a birth date and social security number matching Plaintiff's. It is undisputed, however, that the fugitive's known aliases did not include the names "Francisco Jose" or "Jose" in any combination.

Diane Shouse, a senior clerk who works for the Arapahoe County Sheriff's Office Fugitive Transport Section, also compared Plaintiff's booking report information with a information from the fugitive from justice warrant information she had. She contacted the Sedgwick County Sheriff's Office and ordered a copy of the warrant. Ms. Shouse noted the same similarities between Plaintiff's information and that of the wanted suspect. She did, however, observe some differences in the physical descriptions and other information, which caused her to notify her supervisor of the discrepancies. Plaintiff's identification and the booking report showed that he was 5' 10" and weighed 180-185 pounds. The wanted fugitive, on the other hand, was listed as being 5' 6" and weighing 145 pounds.[2] Nonetheless, after discussion, Ms. Shouse and her supervisor decided they were satisfied that Plaintiff was the person described in the warrant and took no further action. It is undisputed that Ms. Shouse and others at the ACDF had the ability to easily request a fingerprint comparison between Plaintiff and the wanted fugitive but did not do so. There is evidence that the officers were aware that

---

[2]Plaintiff also argues that Ms. Shouse obtained other database information about Plaintiff containing a description of his fingerprint patterns, which also differed from the wanted suspect's. Whether Ms. Shouse had access to the fingerprint data is disputed but immaterial, as Ms. Shouse testified in her deposition that she did not know how to interpret the fingerprint pattern data.

3

information in the teletype was not always accurate.

On November 22, 2005, the Tuesday following Plaintiff's Friday arrest, Plaintiff appeared at a fugitive advisement proceeding. Plaintiff was assigned a public defender to represent him at the hearing. Plaintiff advised his attorney that he wished to waive extradition and did not inform his attorney, the district attorney, or the court that he was not the person named in the warrant. In his deposition, Plaintiff testified that he thought it would be easier to clear up the misunderstanding in Kansas and so decided the fastest resolution would be to return to Kansas, rather than disputing the warrant in Colorado. Plaintiff signed a waiver of extradition form and advisement of rights; the court then accepted the waiver of extradition and informed Plaintiff that an extradition review would be set for December 2, 2005. A copy of the waiver of extradition was provided to Shouse, who then notified the Sedgwick County Sheriff's Office in Wichita that Plaintiff had waived extradition and could be transported.

While incarcerated at the ACDF, Plaintiff sent at least three written Inmate Request Forms. In the first, he requested a phone call to his family, in the second, which occurred after his hearing, he complained of heartburn and requested shoes, and in the third, he requested to see a dentist. Plaintiff at no time sent a written request form about the mistaken identification. Plaintiff was extradited to Sedgwick County, Kansas on or about December 1, 2005 and was thereafter released.

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983. In his Amended Complaint, he asserts one claim against the Arapahoe County defendants, including Shouse and other unnamed officers in their individual capacities, the Sheriff of

4

Arapahoe County in his official capacity, and the County itself through its Board of County Commissioners, contending that the detention violated his Fourth Amendment and Fourteenth Amendment rights.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

## Discussion

Defendants move for summary judgment on the grounds that Plaintiff's detention did not deprive Plaintiff of a constitutional right, that Shouse did not personally participate in any action giving rise to liability and/or that she has absolute or qualified immunity, that the Board is not a proper party, and that no custom or policy of the Board or the Sheriff caused any constitutional violation. I agree with Defendants that

5

Plaintiff cannot, as a matter of law, prove that his detention violated the Fourth or Fourteenth Amendments.

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

The facts here are relatively straightforward. Plaintiff's information matched numerous descriptors and identifiers corresponding to the wanted fugitive, including his first and last name (and middle initial), his Kansas identification card number, and a birth date and social security number used by the suspect, as well as eye color, hair color, race/ethnicity, and identifying scar. In addition, there is no dispute that Shouse and other deputies or employees had some notice that Plaintiff might not be the fugitive and could have easily verified that he was not. The key fact, however, is that Plaintiff, except possibly at his initial booking, did not protest the identification or his detention. Most importantly, at his first court appearance, he informed no one that he was not the suspect identified in the warrant but rather decided to wait until he was returned to Kansas to resolve the problem. Under the governing case law, I must conclude that the

Defendants' actions were no more than negligent, which does not give rise to a constitutional violation.

Plaintiff, unfortunately, is not the first to have been mistaken for a wanted fugitive named in a valid arrest warrant.  The United States Supreme Court addressed mistaken identification issues in *Baker v. McCollan*, 443 U.S. 137 (1979).  In *Baker,* the respondent's brother had appropriated his identification.  When the brother was arrested on narcotics charges, he presented the respondent's driver's license with the brother's picture in it.  An arrest warrant was thereafter issued in the respondent's name and he was arrested after a traffic stop.  The Supreme Court held that the respondent's arrest was constitutionally sufficient because it was pursuant to a facially valid warrant, which satisfied the Fourth Amendment.  In addition, the Court refused to find a constitutional violation in the sheriff's failure to investigate the respondent's claim of mistaken identification.  This insulation from liability was not unlimited, however. "Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment."  443 U.S. at 144. The Court also concluded that, depending on the procedures afforded by a state, a due process violation could result from detention "in the face of repeated protests of innocence" and after "the lapse of a certain amount of time."  *Id.* at 145.  Noting that the Constitution "does not guarantee that only the guilty will be arrested," the Court refused to find the respondent's eight-day detention to be a violation of constitutional dimensions, as it is the role of the judiciary to provide due process in this regard.  *Id.*

7

"[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity [or other defense] . . . .  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim." *Id*. at 145-46.

*Baker*, therefore, did not place an affirmative duty upon police officers to investigate claims of mistaken identity and, moreover, made clear that due process concerns are evaluated by reference the available judicial proceedings.  In addition, *Baker* set forth two implied conditions for an unconstitutional detention: repeated protests of mistaken identity and an extended lapse of time.

*Baker* has therefore provided the framework for mistaken identity cases, including those such as Plaintiff's, where the person arrested has a name similar to that of a suspect in an arrest warrant.  *See, e.g., Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001) (plaintiff was detained on warrant because her named matched alias used by her fugitive sister; although photographs of plaintiff and fugitive did not match, officer's decision to wait until court hearing and allow judge to make final determination was reasonable under the circumstances, following *Baker*); *see also Hill v. Scott*, 349 F.3d 1068 (8th Cir. 2003) (plaintiff Brian Arthur Hill, who was arrested on warrant issued for Brian Walter Hill, had no constitutional claim against arresting officer, as officer knew that first and last names were the same, that the two Brian Hills were two years apart in age and only one inch different in height, and officer did not have information about fugitive's race; although further investigation might have shown error,

8

under the circumstances, officer had sufficient consistent identifying information to reasonably conclude that warrant was for plaintiff); *Archuleta v. Wagner*, Case No. 06-cv-02061-LTB-MJW, 2007 WL 646317 (D. Colo., Feb. 27, 2007) (plaintiff's name was same as alias used by wanted fugitive; booking plaintiff after arrest on warrant, despite claims of innocence and mistaken identity, did not give rise to constitutional claim against booking officer, despite officer's subjective belief that plaintiff might not be person named in warrant).

Here, it was reasonable for the ACDF employees to conclude that Plaintiff was the person named in the warrant, as there were numerous matching identifiers, including a scar on the right arm. Accordingly, I cannot conclude that Plaintiff's Fourth Amendment rights were violated, as the facially valid warrant gave the officers sufficient probable cause to arrest and detain Plaintiff. While further investigation, such as a fingerprint comparison, might have revealed the error, the employees were under no affirmative duty to conduct such an investigation, particularly in light of Plaintiff's apparent acquiescence. Plaintiff's Fourteenth Amendment due process claim also fails, as he was given a prompt hearing but decided not to contest his detention or extradition, or even to notify his attorney, the district attorney, or the court, of the mistake. Moreover, Plaintiff's detention, again considering that he did not make any effort after his initial booking to clear up the error, was not unduly long (November 18 to December 1). To prevail on a substantive due process claim, a plaintiff must demonstrate that the defendants engaged in behavior that shocks the conscience. *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The ultimate standard for

determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.") (internal punctuation and citation omitted). As discussed further below, Defendants here at most negligently failed to discover that Plaintiff was not the fugitive named in the warrant, which does not, in these circumstances, rise to the level of "conscience shocking" conduct.

Plaintiff has cited several cases in which the courts concluded that the detaining or arresting officers acted unconstitutionally in refusing to investigate or release a person wrongfully arrested on a valid warrant. However, these cases all are factually distinguishable from Plaintiff's and, therefore, do not help Plaintiff's claim to survive. *See Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) (man held on warrants issued for his twin brother repeatedly protested his 12-day detention; arrestee and arresting officers told booking sergeant that plaintiff had a twin and prison officials responded to plaintiff's protests by reducing his privileges); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (two-year detention of "obviously" mentally disabled man who shared no physical characteristics with fugitive); *Cannon v. Macon County*, 1 F.3d 1558 (11th Cir. 1993) (three-month detention of person with significant differences in physical appearance, different social security number and date of birth, and who repeatedly protested the detention; booking officer admitted he filled out arrest report with information from NCIC fugitive report rather than from the plaintiff); *Atkins v. City of Chicago*, 441 F. Supp. 2d 921 (N.D. Ill. 2006) (37-day incarceration of plaintiff who repeatedly protested detention and whose information differed from wanted suspect in

almost all respects except name); *see also Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2007) (officer violated plaintiff's Fourth Amendment rights by withholding and concealing exculpatory evidence demonstrating that plaintiff, arrested pursuant to valid warrant, was not the person who committed the crime). These cases in general involve repeated protestations by the arrestee, significant differences between the wanted fugitive's and the arrestee's identifying information, extended detentions and/or other extraordinary circumstances not present here (e.g., mental disability, knowing concealment).

In contrast, the circumstance here present at most negligence, in that the officers could have discovered that Plaintiff was not the wanted fugitive if they had taken further investigative steps. All the cited cases, taken together, show that a wilful refusal to verify a repeated claim of mistaken identity over an extended period of time could support a claim, but none stand for the proposition that the mere failure to discover the error is a constitutional violation in circumstances where the arrestee matches the fugitive in many respects and has the ability and opportunity, including a court hearing, to bring the mistake to light but does not. Plaintiff thus fails to overcome the first prong of the qualified immunity defense, proving a violation of a constitutional right, much less the second prong, showing that the right was clearly established under governing United States Supreme Court or Tenth Circuit case law.

Because the detention did not violate Plaintiff's constitutional rights, I need not

consider Defendants' remaining arguments.

Accordingly, it is ordered:

1. Defendants' Motion for Summary Judgment (doc no 107) is granted. Defendants are entitled to judgment as a matter of law and all asserted claims are dismissed with prejudice.

2. Defendants may have their costs.

DATED at Denver, Colorado, on April 8, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge